UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA S MILKOVITS,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | Case No. 3:24-05695-RJB<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff Cynthia Milkovits seeks review of the denial of her application for social security income ("SSI") benefits. Plaintiff contends that the administrative law judge ("ALJ") erred in evaluating various categories of objective medical evidence, lay evidence, and plaintiff's subjective statements. Dkt. 14. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for an immediate award of benefits.

**I.    PROCEDERAL BACKGROUND**

On December 7, 2016, plaintiff protectively filed an application for SSI benefits, alleging disability. AR299-304[1]. The disability date was later amended to June 17, 2015. AR 1843. Plaintiff's application was denied initially and following further administrative proceedings and

---

[1] AR refers to the Social Security Certified Administrative Record filed under seal at dkt. #7.

ORDER - 1

hearing, the ALJ issued an unfavorable decision on December 5, 2018. AR 1168-1190.

The plaintiff sought review in this court under cause number C20-5104RAJ. AR1197-1198. The district court entered an Order Reversing the Commissioner's Final Decision and Remanding for Further Administrative Proceedings. AR 1207-1214. The court found that the ALJ committed several legal errors and ordered "the ALJ to reevaluate Plaintiff's testimony, Dr. Kim's opinions, and Mr. Basil's and Mr. Giannaris' opinions; reassess the RFC as appropriate; and proceed to step five as necessary." AR 1214. A second administrative hearing was held on October 28, 2021 (AR1131-1167) and the ALJ again issued an unfavorable decision on November 10, 2021. AR1105-1130.

Again, plaintiff sought review in this court under cause number 3:22-CV-5018-LK. There, the Commissioner conceded that the ALJ's decision contained legal errors but argued that the case should be remanded to address the evidentiary conflicts concerning the timing of plaintiff's impairments and limitation." AR1894. The district court agreed and issued an Order Reversing and Remanding the Commissioner's Final Decision. AR1894-1902. The court stated that the ALJ should determine Plaintiff's alleged onset date of disability, reassess the medical opinions, Plaintiff's allegations and further develop the record. AR1902.

A third administrative hearing was held before the ALJ on April 23, 2024 (AR1865-1893) and a third unfavorable decision was issued on June 12, 2024. AR1839-1864. Thereafter, plaintiff filed her petition for review in this court under this cause number 3:24-cv-0595-RJB.

## II.    DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

ORDER - 2

Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir.2001). A claimant is considered "disabled" under the Act if she meets two requirements. See 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough so that the plaintiff is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity (RFC), he can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; see 20 C.F.R. § 404.1520(a).

Utilizing the above five-step disability evaluation process, the ALJ made the following pertinent findings:

**1.** The claimant meets the insured status requirements of the Social Security Act through September 30, 2015. AR1845.
**2.** Plaintiff has not engaged in substantial gainful activity since June 17, 2015, the

ORDER - 3

amended alleged onset date. Id.

**3.** Plaintiff has the following severe impairments: cervical degenerative disc disease (DDD) and retro; thoracic outlet syndrome; fibromyalgia; generalized anxiety disorder (GAD); port-traumatic stress disorder (PTSD); neurocognitive disorder; and major depressive disorder (MDD). Id.

**4.** Plaintiff does not have an impairment or combination of impairments that meets or equals the severity in one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR1846.

**5. …** [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should avoid exposure to hazards; can perform only frequent postural activities including stooping, kneeling, crouching, or crawling; is limited to understanding and remembering short, simple instructions, performing routine tasks with only occasional superficial interaction with the public and co-workers; occasionally reach overhead bilaterally, and frequently reach in other directions with the non-dominant left upper extremity. AR1848-49. (The ALJ identified three occupations that allegedly meets these criteria: cleaner housekeeper, small products assembler, and production assembler. AR1848-49; 55).

**6.** Plaintiff is unable to perform any past relevant work. AR1854.

**10.** Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Citations omitted. Id.

**11**. The claimant has not been under a disability, as defined in the Social Security Act, from June 17, 2015 through the date of this decision. Citations omitted. AR1855.

The plaintiff raised four specific issues supporting her argument that the ALJ failed to reasonably evaluate her subjective symptoms, the third-party statements, the opinions of various treating medical professionals and the opinion of David Widlan, PhD. The plaintiff is advocating for remand for the immediate award of benefits.

**A.  Failure to Provide Specific, Clear, and Convincing Reasons for Rejecting Plaintiff's Symptoms.**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective

ORDER - 4

medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

      The ALJ discounted plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms of her physical and mental condition because they were not entirely consistent with the medical and other evidence in the record. AR1849. In support of these conclusions, the ALJ cited to various reports that contradicted plaintiff's complaints. AR1850-1851. Plaintiff disagrees that these reasons are "clear and convincing," arguing that thereby he erred. Plaintiff cites several examples in the record providing objective support for plaintiff's symptoms and pointing out that the ALJ's discount of symptoms. Dkt#9 at 3-6.

      On review of the medical record, there are several instances where plaintiff's symptoms are objectively noted including her lack of strength, limited range of motion and abnormal sensation. For example, in September 2014 when plaintiff complained of right shoulder pain for 2 ½ - 3 months, an examining nurse noted "right should[er] pain still, limited range of motion." AR 474. She reported "diffuse aching pains all over, especially in the neck, upper back, shoulder girdle, and into the back." AR 624. Treating physician, Dr. Ellen Kim noted that she "also suffers from neck pain. Her MRI last check showed multilevel disease." AR 985. Dr. Kim saw the plaintiff as follow up from her ER visit for severe neck pain radiating to left arm and numbness. AR 988. Dr. Kim noted worsening symptoms for her cervical radiculopathy (pinched

ORDER - 5

nerve)[2] and moderate disk height loss and desiccation, moderate diffuse disk bulge and moderate bilateral uncovertebral spurring. AR 992.

More recently in December 2023, Dr. Hillary B. Starr made several findings from cervical spine x-rays: "Multilevel disk height loss is noted, most significant at C5-C6 and C6-C7. There is associate endplate sclerosis (hardening or increased density of spinal discs causing back pain, stiffness and limited mobility)[3] and osteophytosis (bone spurs)[4], multilevel spondylosis (degeneration between multiple vertebrae)[5]." AR2164.

The records of plaintiff's physical therapy in 2019 showed that she had only 60% level of functioning in her activities of daily living and very limited range of motion for her cervical and upper extremity. AR 1553. The highest level of functioning in the record is at 70%. AR1656. The ALJ failed to address these instances of pain and limitation.

Similarly, the ALJ found that the plaintiff was "in no acute distress" regarding her fibromyalgia. AR 1850. Examples in the record state otherwise. The assessment at Northshore Youth and Family Services included clinical impressions: "fibromyalgia – i.e. constant pain & weak/tired. Thus, it would be hard for her to work." AR 857. She reported "feeling chronically tired. Mostly due to fibromyalgia." AR 959. In April 2019, Dr. Kim increased her pain medication because of her worsening pain associated with fibromyalgia. AR 1818. On November 6, 2023, Dr. Starr noted no improvement with her fibromyalgia. "She has been successfully going to PT which is great but not able to be gainfully employed." AR2168.

The ALJ found that her fibromyalgia flare ups were associated with exercise during

---

[2] https://www.webmd.com/pain-management/pain-management-cervical-radiculopathy
[3] https://radiologyinplainenglish.com/endplate-sclerosis/
[4] https://my.clevelandclinic.org/health/diseases/10395-bone-spurs-osteophytes
[5] https://usaspinecare.com/back_problems/spondylosis/multi/

ORDER - 6

physical therapy. AR 1850. Again, the record shows otherwise. Plaintiff was unable to attend to physical therapy because of severe flare ups from her fibromyalgia. *See e.g.* AR 1553 (unable to attend PT because of flare ups). In November 2019, physical therapy records showed that she was sometimes unable to perform household tasks and had to have help from her son. The records also noted that the plaintiff suffered "increased symptoms when away from PT." AR1656. See also AR1663 ("I have been hurting more since not being in PT."); AR 1681 ("reports increased bilat tightness in the shoulder as she was unable to attend therapy last week. . . . her fibromyalgia flare-up last week was significant debilitating."). There is no indication in the ALJ's decision that he considered these records.

Pertaining to plaintiff's mental functioning, although the ALJ found that her memory was "intermittently abnormal," (AR1850), he provided several examples of good memory during testing to support his conclusion that her cognitive functioning was not severe. The ALJ found that her "judgment has been mostly normal." Id.

The record shows a different story. The plaintiff was found to have cognitive impairment dating back to before 2015. "Severe memory loss" was noted in 2014. AR779. During an evaluation in 2015, plaintiff was found to have marked impairment for her understanding, remembering and persisting in tasks followed by instructions. AR864. That assessment also found moderate impairment in cognitive functioning in seven areas resulting in an overall rating of moderate impairment. AR865. A similar evaluation in September 2016 found similar results and severe depression. AR885-890. Her memory, concentration, insight and judgment were not within normal limits. AR866. In August 2015, her thought process was found to be "very scattered, has trouble with recall of names." AR899. See also AR900 ("obvious cognitive impairment"); AR904 ("progressive cognitive dysfunction"); AR908, *id*. Finally, in April 2024,

ORDER - 7

treating counselor, Karl "Ed" Schwartz diagnosed plaintiff with PTSD and GAD, based on his treatment of her since October 2023. His goal was to teach plaintiff techniques "to improve management of stress and the severe impediment to normal function that accompany this stress. This focus is necessary as a prerequisite for the management of the complex, co-occurring issues that are indicated by Client's Diagnosis. Prognosis: Extent and timing of improvement is uncertain." AR2199. The record does not reflect any evidence of malingering.

In sum, plaintiff presented objective medical evidence of her symptoms supporting the diagnoses of severe impairment, especially her fibromyalgia and cognitive impairment. There is no evidence of malingering. The ALJ committed legal error by rejecting this evidence without articulating specific clear and convincing reasons for doing so.

**B. The ALJ Committed Legal Error by Discounting Lay Evidence.**

The plaintiff argues that the ALJ gave third-party statements little weight. The ALJ's decision indicated he did so because those statements were not medical opinions and not entirely consistent with the record. AR1851.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). The ALJ must articulate his assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine v Commissioner Social Security Admin*, 574 F.3d 685, 694 (9th 2009).

ORDER - 8

But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, superseded on other grounds by 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.*

Four of the five statements referenced in the ALJ's decision came from case managers of Hopelink, an agency based in North and East King County, Washington to assist disabled people, among other groups. The plaintiff has received services from Hopelink since 2015. These case managers, who are specifically trained to assist disabled persons, communicated with the plaintiff either in person or over the telephone at least once a week consistently since 2015. AR368. The statements describe in detail the plaintiff's physical symptoms and limitations due to pain associated with fibromyalgia, DDD, and TOS. AR368; 413; 1411; 2144. The statements further detail the plaintiff's deficits in her mental functioning, such as her disorganization, forgetfulness, inability to drive places due to difficulty in following directions, and very low stress tolerance. *Id.*

Most telling is the statement by Ms. Dorstad wherein she wrote that the Hopelink program that assists the plaintiff is a two-year program. "Due to the severity and lasting nature of Cynthia's disability, I have advocated for Hopelink's program manager to make an exception, allowing Cynthia to continue with case management. This kind of exception is very rare and was granted to Cynthia specifically due to her needs, as impacted by her disability." AR2146.

The ALJ is correct that these statements are not medical opinions and their observations and work with the plaintiff do not always mirror some of notations in the medical reports, but the statements are entitled to more than little weight. The ALJ failed to note that the case managers

ORDER - 9

had a unique professional status with plaintiff, different from a family member or friend of plaintiff. With that status, the observations of plaintiff's abilities and disabilities are deserving of more consideration. The ALJ failed to give germane reasons for discounting this evidence. The court agrees with the plaintiff that this failure amounts to legal error.

### C. The ALJ Erred in Rejecting the Opinions of Treating Medical Professionals.

The Social Security regulations make clear that a treating physician's reports are to be viewed in light of the entire treatment relationship. The weight accorded a treating physician's opinion depends on the length of the treatment relationship, the frequency of visits, and the nature and extent of treatment received. 20 C.F.R. § 404.1527(d)(2)(i), (ii). Even when not accorded controlling weight, a treating physician's opinion is entitled to deference. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995)). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id*. Also, when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001).

The plaintiff argues that the ALJ rejected the expert opinions of Dr. Ellen Kim, physical therapists Bernard Bansil and Brock Giannaris, and Dr. Hillary Brook Starr. The ALJ gave these professionals "little weight," and that even though they "have a significant treating relationship" with the plaintiff, he found that their opinions had "little or nothing to substantiate them" and were "inconsistent with the record as a whole" AR1853.

The record indicated that Dr. Kim has been treating the plaintiff continuously since September 2016 (AR928) with the last clinical note in February 2021 (AR1781) and physical therapists Bernard Bansil and Brock Giannaris off and on starting in July 2018 (AR1418) and March 2024 (AR2149). Hundreds of pages of the medical record came from their offices. The opinion letters that they complete did not require them to add detail even though there was some added detail. See e.g.AR2149-2151, 1104,1807-08. The plaintiff's point is well taken, that is, these different independent sources came to the same conclusions and are consistent with each other.

The ALJ's reasons for rejecting the opinions of treating medical professionals are not legally sufficient and not supported by substantial evidence. For example, he failed to take into account the length of the treatment relationship with Dr. Kim and the physical therapists, the number of visits the plaintiff made to them, and the nature and extent of their treatment. His rejection without more amounts to legal error.

**D.     The ALJ Erred in Rejecting the Opinion of Dr. Widlan.**

The plaintiff's final argument is that the ALJ committed legal error because he failed to give specific, clear, and convincing reasons for giving David Widlan PhD's opinion "little weight. The ALJ rejected Dr. Widlan's opinion because it was based on a one-time exam and it was inconsistent with the record. AR1852.

After reviewing plaintiff's record and conducting a mental status examination and an interview with her, Dr Widlan opined that she suffered from PTSD, GAD, major depressive disorder, unspecified neurocognitive disorder, fibromyalgia, and TOS. AR1778; 1786. He concluded that "[t]hese disorders cause difficulties in all areas of functioning. She is not able to sustain attention for even simple tasks and would be prone to absenteeism and poor social

ORDER - 11

relatedness." AR1781. He cited to the record dating back to 6/17/2015 of past mental health diagnoses and symptoms, and areas of marked impairment. AR1783. He observed that plaintiff's grooming was "marginal" (AR1784), she presented as "very agitated", "quite tearful" and "quite disorganized", "poor remote memory and had trouble sustaining attention." *Id*. Dr. Widlan's opinion is dated September 2021 (AR1777-1787), and he employed the same process that state psychological consultants, Rita Flanagan, PhD and Edward Beaty, PhD followed. The ALJ gave their opinions "great weight" because they "are non-treating, non-examining sources who, however, possess extensive program knowledge." AR1852.

The ALJ failed to take into account that Dr. Widlan's opinion (in 2021) was four years after both the opinions of Dr. Flanagan and Dr. Beaty (both in 2017) and the record reflects that plaintiff's condition had worsened during that time. The ALJ failed to explain why he felt that Dr. Flanagan and Beaty were more qualified that Dr. Widlan to evaluate and opine on plaintiff's condition. Dr. Widlan was also a non-treating consultant who saw the plaintiff one time, but there is no evidence that he was unqualified to apply the principles of the Social Security Act. It appears to the court that the ALJ gave Dr. Flanagan and Dr. Beaty great weight because they agreed with the ALJ's assessment of the plaintiff's overall situation and Dr. Widlan did not.

Although the ALJ is not bound by an expert medical opinion, he must provide "specific and legitimate" reasons for rejecting the expert opinion. *Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (citation omitted)). The ALJ's citations to the record to support his rejection of Dr. Widlan's opinion all are dated before 2018. AR1852. Those citations do not reflect the

ORDER - 12

record as a whole, making the ALJ's objections unsupported. The ALJ committed legal error by failing to set out a detailed and thorough summary of the facts to support his rejection of Dr. Widlan.

## II. Remand for an Award of Benefits

Although the plaintiff did not provide authority to support her request for remand for an immediate award of benefits, this case appears to be appropriate for such a result.

Under the Social Security Act, "courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. § 405(g)). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Here, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's objective and subjective medical and lay evidence. See *infra*, I. Plaintiff has already had two remands for further development of the record, including two hearings before the same ALJ. Most of the evidence the ALJ has reviewed twice and came to the same conclusion. There is no

ORDER - 13


reasonable expectation that a third remand would result in a different decision.

Second, there are no outstanding issues that must be resolved. As discussed above, plaintiff met her burden of establishing that she has an inability to engage in any substantial gainful activity because of her severe impairments. She further met her burden of showing that she is unable to perform her past jobs and any others that exists in the national economy. The evidence establishes that plaintiff suffered an onset of disability on or before June 17, 2015.

Third, crediting the improperly discounted evidence as true, the ALJ would be required to find plaintiff disabled. *See* 20 C.F.R § 416.920(d) (if any of the claimant's impairments meet or medically equal a listed impairment, she is deemed disabled).

As set forth herein, the Court finds that the record has been fully developed in this case, and that remanding for further proceedings "would serve no further purpose." *Smolen*, 80 F.3d at 1292; *Holohan*, 246 F.3d at 1210. Indeed, allowing the Commissioner to decide these issues again "would create an unfair 'heads, we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) (noting that the "Commissioner, having lost this appeal, should not have another opportunity . . . any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings."). Further, the plaintiff has waited since December 2016 when she first filed her application for benefits. As noted in *Garrison, supra*, further delaying benefits by multiple administrative proceedings only serves to cause the plaintiff further financial, medical, and emotional damage. 759 F.3d at 1019 (citation omitted).  Because review of the record as a whole does not create serious doubt that plaintiff is disabled, the Court remands the case for an immediate award of benefits.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an immediate award of benefits.

DATED this 21st day of July, 2025.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge